Good morning, Your Honors. May it please the Court. My name is Kevin Henry, and I represent the appellant in this case, Devin Moffitt. And I did also represent Mr. Moffitt at the trial in this case. This Court in United States v. Parole has made the note that we have never vacated a conviction where the gun in question was found with a drug stash in connection with a 924C possession and furtherance of a drug crime. And I would respectfully submit that this is the case that the Court should do that in. And I say that because of the factual circumstances in which these guns were possessed by Mr. Moffitt on the day of his arrest. And I'd like to start by briefly running through those facts. On the morning of his arrest, Mr. Moffitt was being sought by law enforcement on an unrelated warrant in a state case. He was not under indictment for any drug distribution crimes. He was encountered by the police outside of an apartment building where his father lived, and he was carrying a shoulder bag that was zipped up. Mr. Moffitt took off running. He was hit by law enforcement with two paintballs from a paintball gun to, I guess, to mark his person. Ultimately, he was captured by law enforcement a short distance away, and the bag was discovered in a the shoulder bag was his. We are not disputing that, Your Honor. And I should say, for the record, we're not disputing the underlying drug conviction and his intent to distribute drugs. The guns, and I think the most important fact and circumstance, and I won't say evidence, because there was no evidence, that Mr. Moffitt had ever previously been known to carry guns in connection with any drug. Why do you need that? If the guns are with the drugs, literally in a bag with the drugs, there was testimony that he was conducting a drug transaction that day. They're loaded. The safety is off. There's text messages about the guns. Why do you need someone to say, I saw him? You know, you noted in your testimony that you never saw him with a gun. She'd only been with him a couple of weeks. There was a safe that she didn't have access to in the apartment. So this is just a sufficiency challenge. We have to draw all inferences in the government's favor. Why isn't that plenty for the jury to rationally conclude that those guns were in furtherance of the drug trade? Because, Your Honor, the facts and circumstances. He was also carrying $16,000, right, in cash. He, that's, it was a large amount of cash. That sounds about right. $16,400, I think. Yes. Couldn't the jury have reasonably concluded that he had the guns to protect the drugs and the money? I would say no. And I would say no because of the other evidence, the facts and circumstances, being that the testimony established that on that morning, and I do want to address your point, Your Honor, about him conducting a drug transaction, because I think we have a factual dispute there. I think that the testimony about that morning from Mr. Moffitt's girlfriend was that she went out to do a drug transaction, he went out to do a drug transaction, and then, separate and apart from that, he went out to meet Mr. Myers, which was in connection with looking for this EBT card. No. On page 83 of the appendix, she testified that he went to meet Casey because they couldn't find this card, and Casey's wife was upset. And she said she didn't have money to feed her kids, and they needed more drugs. So Devin was just going to give them some money and some more crack until he found it, so they could get high and have money to feed the kids until they found the card. So there's talk about crack as well. That's right. She did say on direct that she thought he was going to give them money and crack to tide them over. So the jury would accept that. Well, because the primary purpose of that meeting with Casey Myers was to look for this EBT card. And the other important part about this is the evidence established that what they were doing, Mr. Moffitt and his girlfriend, at that time on that morning, was gathering their belongings to move. So our position is that those guns were in that bag not for the purpose of providing protection or to further drug transactions, but simply to move. But that seems sort of quintessentially the sort of argument that could be made to the jury and that it's for the jury to decide. I mean, my problem with your argument is it seems like you are demanding that there must be direct evidence in order for there to be sufficient evidence. But if you think of this as a circumstantial case, it seems a really strong one for a reasonable inference that the guns were possessed because he was out. He was possessed also of a large amount of money and a large amount of drugs, and he was out on a drug transaction, and that seems like a classic case. Well, and that's why, Your Honor, I emphasize the point that the evidence about the fact that he had never before been known to carry guns in connection with a drug transaction. And I think that that's important because it would provide the jury with context for what he was doing on that particular morning. And what he – what the jury did know was that he was gathering up his belongings to move them, and that was what he was doing with those guns. Was he carrying anything else other than the drugs, the cash, and the guns? There were a number of other items in the sling bag, drug-related. For example, there was a scale, I know. I mean, the suggestion is the jury could have found that he was moving to a different residence, but was there anything else? Did he have clothing, extra clothing, anything else that one might carry if one were moving to a new residence? No, Your Honor. He had the sling bag and he had a separate fanny pack with the money in it. But – so, you know, our argument is that – Did you make that argument to the jury in the summation, that he was just moving the guns and that it wasn't an infringement of anything? I did, Your Honor. So they rejected that, right? There's a lot of different inferences that could be drawn, as Chief Judge Livingston pointed out, and they rejected one. That's not the only inference. Another inference is that he was involved in drugs that day and had a loaded gun with the drugs, so if anything came up, he would be prepared to add money, as Judge Chin pointed out. Isn't that a reasonable inference the jury could draw? I don't think so when you combine all of the facts and circumstances. And again, I'll go back to the point that if there had been evidence, for example, that Mr. Moffitt does carry guns and did carry guns in connection with drug trafficking, that would provide a basis for an inference that he was doing so on that day. But absent that evidence and knowing that he was just – they were gathering their items to move them, I don't think it's a sufficient basis to find that the purpose of those guns in the bag was for protection. And I would also make the point that if they were for protection, they wouldn't be in a zipped-up bag over the shoulder. We've found in many cases, Chief Judge, when he's not on our panel, we've found a gun in a trunk with drugs was in close enough proximity to the infirmary. So you're suggesting that if he doesn't have it on his body, it can't be? No. What I'm suggesting is that every case is different, as this Court has said many times. And in those circumstances, if you were to be carrying – when you're out on the street, out and about carrying a large quantity of drugs and cash, if you were going to carry a gun for protection, it would be accessible in terms of in a pocket, in a waistband, other than zipped up in a bag. So I think that the only inference you can draw from that is that he wasn't thinking that these guns were going to be of any value to him in this context. And I'll reserve the rest of my time for the vote. We'll hear from the government. Good morning, Your Honors. May it please the Court, Andrew Gilman on behalf of the United States. Your Honors, the jury's verdict convicting Moffitt of possessing firearms in furtherance of his drug trafficking crime should be upheld. There was sufficient evidence that the two loaded handguns Moffitt possessed afforded him an advantage in protecting the distribution quantity, drug supply, and drug proceeds he possessed. How do you respond to the argument that they were zipped up in a bag and therefore not accessible, et cetera? Being in a pocket, a waistband. Yes, Your Honor. This circuit's case law shows there's no requirement to find the nexus element that the guns have to be on your person. These bags, as the Court can see in the supplemental appendix on page 5 and 7, as pictured, the guns were immediately accessible simply by opening up the bag and reaching into it. They certainly were within grasp to provide a ready advantage in the event that a threat would arise. Looking at this Court's well-established test in this circuit, as recognized in this Court's opinion in Snow, the ultimate question is whether the firearm afforded some advantage, actual or potential, real or contingent, relevant to the vicissitudes of drug trafficking. And that's this Court's decision in Snow quoting Lutter. And to make that determination, this Court looks to a series of non-exhaustive factors to guide this analysis. And looking at those factors here, Your Honor, they show overwhelmingly that there was ample evidence for the jury to conclude that these firearms were possessed in furtherance of the drug trafficking crime. I think Mr. Henry's argument, and he highlighted this in his reply, is not that he did make the argument that it was a zipped bag and you couldn't really access it. But even assuming you could, I think his other argument was that that wasn't the intent of the defendant on that day. Like, sure, if someone was doing a drug deal, they would have the gun there, but that there was evidence that they were moving the items because they were concerned about law enforcement. So do you want to address that? Yes, Your Honor. This Court has made clear in its decision in Lutter that, which recognized, quote, that a gun may be possessed for multiple purposes. And so even if one of the purposes was for Mr. Moffitt to move his entire drug dealing toolkit to another location, and to be clear, the purpose was that they can continue dealing drugs as Ms. Reynolds testified at trial that day. If even one of those purposes was to move his guns, his drug supply, his proceeds, the guns still in the bag on his person provided him an advantage in his drug dealing, to protect himself, his drugs, and his proceeds. So it would still be in furtherance even assuming he was moving them. That's what you're saying? Yes, Your Honor. And that's, you know, that's something this Court considered under its multi-factor analysis in Snow, looking at the time, the last snow factor, the time and circumstances under which the gun is found. The evidence in trial was that, as this Court pointed out previously, Mr. Moffitt went that morning to distribute crack to a customer because he had lost an EBT card belonging to that customer's family. And as Ms. Reynolds further testified, their plan was to move from this apartment where they were to another location to continue to sell their drugs. That's as the record site that Judge Bianco recognized on Appendix 83. Could you address how the text messages support the inferences that you urged the jury to draw? Yes. Specifically, there were text messages, Your Honor, where Mr. Moffitt referenced the exact caliber of firearms he possessed, a .22 and a .9, as the district court found in its decision denying the motion for judgment of acquittal. That message regarding the 9 millimeter, in which Mr. Moffitt wrote, quote, yo, I need like a 9 or something, bro, ASAP. I got bread or whatever. The district court found that that message showed the defendant urgently needed a firearm, implying that there was some required purpose, use for it. And that tends to show that he intended to possess these firearms in furtherance of his drug trafficking, which is not disputed that he was engaged in drug trafficking here, as that conviction is not being appealed. Is the government's position that bread is a reference to drugs? Is that the government's position? Well, the government's position, Your Honor, I believe bread would be a reference to money, slang for money. But the whatever of that phrase could be an exchange of drugs for a gun. And the jury would be reasonable in concluding that. Looking at the snow factors in particular, looking at the type of activity here, the first factor, Mr. Moffitt was involved in hand-to-hand drug sales, where he was directly interfacing with customers, and guns would be important to protect him. Second, the accessibility of the firearm. We talked about this in response to Judge Chin's question about the guns being in the sling bag, the shoulder bag, readily accessible. The defense simply swung the bag around, opened it, and reached in. The type of weapons, handguns, that could be easily transported and concealed. The fourth and fifth factors, whether the weapon was stolen, there was no evidence presented on that factor. And the status of the possession, although Mr. Moffitt was in felon possession, he was convicted of that in the third count, the judge bifurcated the trial. That was not before the jury. Whether the gun was loaded. Here, the guns were fully loaded. One, the nine-millimeter gun with a bullet in the chamber and the safety off. These guns were ready to be used. Proximity to drugs or drug profits. Mr. Moffitt had the profits on his person. The drugs were in the bags with the gun. And the time and circumstances. We talked about that. Mr. Moffitt was, that day, engaged in drug dealing. The trial evidence showed, as Ms. Reynolds testified, based on the distribution that morning and their plan to continue selling drugs. As Ms. Snow, Your Honors, Moffitt possessed these handguns to facilitate or advance his drug trafficking crime. By protecting himself, his drugs, and his business. Accordingly, Mr. Moffitt possessed the firearms in furtherance of his drug trafficking crime. And his court should uphold the jury's verdict. Thank you. If there are no further questions, I'll rest on the papers. We'll hear rebuttal. Thank you, Your Honor. The first thing I would like to do is to address the passage from Luder. In our briefing, we made the point that that could be read to suggest that this is really a subjective, or an objective, as opposed to a subjective analysis. And I don't think that's the case. I don't think that any time a gun could reasonably be viewed as being advantageous for drug dealing, absent or setting aside, without regard to any subjective intent, is enough for a jury to convict under 924C. You know, and there's one, in this course, this is- How do you respond to the argument that the text message, I need a 9 ASAP, the fact that the guns were loaded, a bullet was in the chamber of one of them, I mean, if these were being moved, wouldn't they have been moved in a, you know, with the safeties on? The fact that the guns were loaded is the best fact in favor of the government. There's no question about that. But I don't think that that one fact overwhelms all of the other analysis here. Because I think what needs to happen for the government to secure a conviction in these cases is that they do have to show subjective intent on the part of the defendant that he was carrying those guns on that morning for the purpose of protecting himself, which I agree would be- How do you prove subjective intent? You know, actions speak louder than words. You look at his actions, and from his actions, you can infer that he had the guns to protect the upcoming drug transactions. Understood, Your Honor. And that's why I think this Court adopted factors in Snow to help assess whether that subjective intent is met. But as the Court also noted in Lutter, is that these factors are of, I think, the language of the Court was of limited value, because these are such case-specific questions. And when- Aren't you sort of, aren't you arguing that just because there was evidence that he was moving possessions, that he couldn't possess, that he could only have possessed these weapons for the purpose of moving them? Let's say he was moving them. Couldn't he also have possessed them before he started to move them in furtherance of his drug business and moved them also with the intent that he continued to possess them to further his drug business? Well, what I'm arguing, I guess more specifically, Your Honor, is that where there are two inferences that can be drawn and one leads to a not guilty verdict and one leads to a guilty verdict, I think that that is by definition reasonable doubt. I think that's what this Court said in the Hussein case that we cited. And that was the argument we made below, and that's the argument we would make here, is that there are reasonable inferences to draw that these guns were not carried for the purpose of protecting Mr. Moffitt, that that was not his intent on that day. And therefore, there's reasonable doubt. Thank you. Thank you. And we'll take the matter under advisement. Thank you both. Thank you.